UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NINA GASKINS     Plaintiff

v.     Civil Action No. 3:24-cv-00708

HARDIN COUNTY HABITAT FOR     Defendants
HUMANITY, INC. AND KENTUCKY
HABITAT FOR HUMANITY, INC.

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Defendant Hardin County Habitat for Humanity ("HCHFH") moves for partial summary judgment on Counts 1 and 2, and Kentucky Habitat for Humanity ("Kentucky Habitat") moves for summary judgment on all Plaintiff Nina Gaskins' ("Gaskins") claims. [DE 11; DE 15]. Gaskins responded, and Defendants replied. [DE 14; DE 16; DE 21; DE 22]. Briefing is complete and the matter is ripe. For the reasons that follow, the Court **DENIES WITHOUT PREJUDICE** Defendants' motions for partial summary judgment and summary judgment. [DE 11; DE 15].

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Nina Gaskins was working for Amazon when she developed knee issues that compromised her mobility. [DE 21-1 ¶ 4]. Unable to provide accommodations, Amazon referred Gaskins to the "Amazon Community Together" ("ACT") program, which temporarily places Amazon workers with local nonprofit organizations that can provide suitable accommodations. [DE 21-2 at 381]. Through the ACT program, Gaskins began working for HCHFH as a cashier. [DE1-1 ¶ 12]. Gaskins later accepted an offer for permanent employment with HCHFH. [DE 21-1 ¶ 7-8]. Gaskins alleges that she served in her role without issue from February 2023 until September 2023, during which time HCHFH continued accommodating her needs. [DE 1-1¶ 12-

1

13]. In September 2023, however, Gaskins asserts that HCHFH hired a new supervisor who refused to accommodate Gaskins' disability. [*Id.* ¶ 13-22]. Gaskins alleges that, under the new supervisor, she was subject to repeated acts of hostility due to her disability, ultimately culminating in her termination on January 9, 2024. [*Id.* ¶ 23-43].

On November 11, 2024, Gaskins filed a complaint against both HCHFH and Kentucky Habitat in Hardin County Circuit Court alleging: (1) disability discrimination under both the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA"); (2) failure to accommodate under the ADA and KCRA; (3) retaliation under the ADA and KCRA; and (4) a violation of the Kentucky Wages and Hours Act for HCHFH's alleged failure to compensate her for the day she was terminated. [*Id.* ¶ 56-93]. Defendant HCHFH removed the case to federal court, and both Defendants answered.

On December 26, 2024, prior to any discovery taking place, Kentucky Habitat filed a motion for summary judgment, arguing that it is not an "employer" for purposes of the ADA and KCRA and that it was not involved in HCHFH's employment decisions. [DE 11 at 131-34]. In support of this assertion, Kentucky Habitat attached an affidavit of its executive director, Mary Shearer, who stated that she is Kentucky Habitat's only employee. [DE 11-1 ¶ 2].

On January 14, 2025, during the parties' Rule 26(f) planning meeting they set a deadline of March 2, 2026 for all pretrial discovery. [DE 12 at 145]. Gaskins submitted interrogatories, requests for production of documents, and requests for admission to Kentucky Habitat that same day. [DE 13 ¶ 4]. Gaskins propounded similar discovery requests to HCHFH the next day. [DE 13 ¶ 5]. On January 16, 2025, Gaskins filed a response to Kentucky Habitat's motion, along with excerpts from the HCHFH handbook and an affidavit in which she claimed a joint relationship between Kentucky Habitat and HCHFH. [DE 14; DE 14-1; DE 14-2]. Contemporaneously, she

filed her first FRCP 56(d) affidavit, asserting the need for additional discovery and attaching the discovery requests previously served on Defendants. [DE 13].

On January 24, HCHFH filed its motion for partial summary judgment on Gaskins' first two counts, similarly challenging its status as an employer. [DE 15-2]. With its motion, HCHFH attached an affidavit from CEO Scott Turner, Secretary of State reports for HCHFH and Kentucky Habitat, HCHFH payroll records and by-laws, and documents relating to the Amazon ACT program. [DE 15-3; DE 15-4; DE 15-5; DE 15-6; DE 15-7].

On February 14, 2025, the Court issued the parties suggested scheduling, setting a discovery deadline of March 2, 2026 and a dispositive motion deadline of April 27, 2026. [DE 19 at 353]. On February 27, 2025, Gaskins responded to HCHFH's motion and filed an additional Rule 56(d) affidavit calling for further discovery and noting that Gaskins would not obtain HCHFH's responses to interrogatories or requests for production of documents until after the deadline to file her response. [DE 20 ¶ 9].

## II. STANDARD

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

### B. Rule 56(d) Standard

If the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). "The burden is on the party seeking additional discovery to demonstrate why such discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (citing *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003)).

Rule 56(d) imposes two distinct requirements on nonmovants. First, they must file an affidavit or declaration. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002). Second, that affidavit must state with "'some precision the materials [nonmovant] hopes to obtain with further discovery, and exactly how [they] expect[ ] those materials would help [them] in opposing summary judgment.'" *Summers*, 368 F.3d at 887 (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)). "Bare allegations or vague assertions of the need for discovery are not enough." *Id.* (citing *United States v. Cantrell*, 92 F. Supp.2d 704, 717 (S.D. Ohio 2000)). At the same time, "district courts should construe motions that invoke [Rule 56(d)] generously, holding parties to the rule's spirit rather than its letter." *Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019) (quoting *F.T.C v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 n.7 (6th Cir. 2014)). The Sixth Circuit "has cited approvingly other circuits' view that 'a . . . motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Id.* at 490–91 (alteration in original) (quoting *E.M.A. Nationwide, Inc.*, 767 F.3d at 623 n.7).

After confirming that Plaintiff's affidavits meet the technical requirements, the Court must consider the five factors set forth in *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995):

> (1) [W]hen the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (quoting *Plott*, 71 F.3d at 1196–97). Accordingly, the Court will first determine whether Gaskins' requests for additional discovery meet Rule 56(d)'s technical requirements and then analyze whether the five *Plott* factors weigh in favor of allowing additional discovery before granting summary judgment.

### III. ANALYSIS

Both Kentucky Habitat and HCHFH maintain that they are not "employers" within the meaning of the ADA and the KCRA because they did not employ fifteen or more people during the relevant period as required by both statutes. [DE 11 at 131-32; DE 15-2 at 238]. The Defendants further assert that they cannot be considered joint or integrated employers, and thus their employee numbers cannot be aggregated to reach the fifteen-person threshold. [DE 11 at 132-34; DE 15-2 at 239]. They contend that, even if they were joint employers, their combined employment numbers would still fall below fifteen. [DE 15-2 at 240-41; DE 16 at 342]. In a similar vein, Kentucky Habitat maintains that it cannot be held liable for any employment decisions made by HCHFH because the two are "distinct entities that share nothing but a common general mission to eradicate poverty housing in Kentucky, and the license to use the trademarked name 'Habitat for Humanity.'" [DE 11 at 1324]. Without the requisite number of employees, both Defendants maintain that they are not subject to the anti-discrimination provisions of the ADA and KCRA and

6

therefore those claims must fail as a matter of law. [DE 11 at 131-32; DE 15-2 at 237]. Kentucky Habitat additionally asserts that its lack of involvement in HCHFH's employment decisions entitles it to summary judgment with respect to all of Gaskins' claims because her claims rest on a firing decision within the sole discretion of HCHFH. [DE 11 at 132-34].

Gaskins contends that the lack of discovery prevents her from effectively contesting Defendants' claims about how many individuals they employ or the nature of their relationship with one another. [DE 14 at 210-14; DE 21 at 367-69]. As a result, Gaskins submits two Rule 56(d) affidavits calling for additional discovery before the Court considers Defendants' motions. [DE 13; DE 20].

### A. Rule 56(d)'s Technical Requirements for Gaskins' Affidavits

As to the technical requirements of Rule 56(d), in response to Kentucky Habitat's motion for summary judgment, Gaskins filed a Rule 56(d) affidavit on January 16, 2025. [DE 13]. At that time, Gaskins had requested—but not yet received— responses to interrogatories, requests for production, and requests for admission from both HCHFH and Kentucky Habitat. [*Id.* ¶ 4-6]. Kentucky Habitat did not submit responses to these requests before Gaskins' deadline to respond to the motion for summary judgment. [*Id.* ¶ 6]. In the affidavit, Gaskins' attorney notes that answers to interrogatories would serve the purpose of "highlight[ing] the day-to-day functions, management personnel and facilities, management of the locations and administrative and/or disciplinary responsibilities." [*Id.* ¶ 8]. The affidavit further asserts that Gaskins hopes to receive any "employment handbooks for Kentucky Habitat and any given or created for Affiliate use . . . and documents informing the relationship between Kentucky Habitat and Hardin Habitat, including corporate structure, memorandums of agreement, communications regarding any

7

employee, and contracts." [*Id.* ¶ 9]. Through these documents and depositions of "Defendants' agent," Gaskins seeks to "explore the interplay between Defendants' businesses." [*Id.* ¶ 11].

Gaskins' response to Kentucky Habitat's motion for summary judgment offers additional details on the facts she hopes to uncover with further discovery. She explains that Kentucky Habitat relies solely on a single affidavit to support its contentions that it has no affiliation with HCHFH and employs only one person. [DE 14 at 212]. She asserts that documentation such as "memorandums of understanding with the national Habitat for Humanity organization or local affiliates" and "by-laws that show a separation between Kentucky Habitat and its affiliates" are necessary to substantiate Kentucky Habitat's claims. [*Id.*]. Gaskins' affidavit adequately describes the specific documentation she needs to contest Kentucky Habitat's motion for summary judgment—memorandums of understanding, by-laws, communications regarding employees, and other documents that may inform the relationship between the two Defendants. She also explains how such documentation will aid her—by verifying the number of people Kentucky Habitat employed and by clarifying how the organization engaged with HCHFH during the relevant period. This information could create a genuine issue of material fact regarding Kentucky Habitat's status as an employer under the ADA and KCRA. As a result, Gaskins has fulfilled Rule 56(d)'s requirement of stating with "some precision the materials [she] hopes to obtain with further discovery, and exactly how . . . those materials would help [her] in opposing summary judgment." *See Summers*, 368 F.3d at 887 (quoting *Simmons Oil Corp.*, 86 F.3d at 1144).

Gaskins filed a second Rule 56(d) affidavit on February 27, 2025, after HCHFH filed its motion for partial summary judgment. [DE 20]. By that time, Gaskins had received responses to her requests for admission from HCHFH and Kentucky Habitat, both of which, she asserts, consisted of "blanket denials." [DE 20 ¶ 4-5]. She had also received responses to interrogatories

8

from Kentucky Habitat as well as documents showing "co-sponsored projects" between the two organizations. [*Id.* ¶ 7-8]. She had not, however, received responses to interrogatories or requests for production of documents from HCHFH, and she did not receive such discovery until after the deadline for her response to HCHFH's motion for partial summary judgment. [*Id.* ¶ 9].

While Gaskins' second affidavit fails to specify the exact nature of the discovery she seeks from HCHFH, her other filings fulfill this requirement. In her response to HCHFH's motion for partial summary judgment, for instance, Gaskins asserts that the documentation provided by HCHFH to establish its employee numbers—payroll reports and organization by-laws—are not sufficient for Gaskins to ascertain whether HCHFH's independent contractors, volunteers, and the members of the board of directors could be considered employees. [DE 21 at 370]. As such, she requests personnel files, documentation relating to HCHFH's "corporate hierarchy and corporate organizational structure," and identification of "every person who serves on [HCHFH's] board of directors, including their dates of tenure and their roles in the organization." [DE 22-1 at 412, 415, 416]. HCHFH did not respond to these requests until after Gaskins' filing deadline for her response to HCHFH's motion for partial summary judgment. [DE 20 ¶ 9]. Gaskins also notes in her response that she hopes to take depositions to "scrutiniz[e] the testimony of the affiants in Defendants' respective motions"—that is, Kentucky Habitat executive director Mary Shearer and HCHFH CEO Scott Turner. [DE 21 at 368].

Gaskins' second affidavit also incorporates the contents of her first affidavit, which calls for "documents informing the relationship between Kentucky Habitat and [HCHFH], including corporate structure, memorandums of agreement, communications regarding any employee, and contracts." [DE 20 ¶ 3; DE 13 ¶ 9]. The nature of the relationship between Kentucky Habitat and HCHFH bears on whether the two entities can be considered joint employers and, relatedly,

9

whether they together employ the requisite number required by the ADA and KCRA. Thus, the discovery Gaskins requests from Kentucky Habitat regarding its corporate structure, number of employees, and relationship with Habitat affiliates would also be useful to Gaskins in responding to HCHFH's motion for partial summary judgment.

While HCHFH asserts that Gaskins' second affidavit is "overly general," the Sixth Circuit has explained that a formal affidavit may not be required "when a party has clearly explained its need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment." *Unan v. Lyon*, 853 F.3d 279, 294 (6th Cir. 2017) (quoting *United States v. Rohner*, 634 F.App'x 495, 504 (6th Cir. 2015)). In this instance, Gaskins' various filings—including her first 56(d) affidavit and both responses to Defendants' motions—provide sufficient detail as to the discovery she seeks to meet the technical requirements of FRCP 56(d).

### B. *Plott* Factors

Having found that Gaskins has complied with Rule 56(d)'s technical requirements, the Court now turns to the five *Plott* factors. In weighing these factors, the Court is mindful of the early stage of these proceedings. Discovery does not close until March 2026, yet the Defendants filed their motions for summary judgment in December 2024 and January 2025. [DE 19; DE 11; DE 15]. Moreover, Gaskins did not have the benefit of Defendants' responses to her interrogatories or document requests by the time she filed her responses to their respective motions for summary judgment. [DE 13 ¶ 6; DE 20 ¶ 9].

Though *Plott* is a multi-factor test, the Sixth Circuit has stated that the Court's "main inquiry" is the fourth factor; that is, "'whether the moving party was diligent in pursuing discovery.'" *E.M.A. Nationwide, Inc.*, 767 F.3d at 623 (quoting *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)). Thus, the Court will discuss the fourth factor first. *See*

10

*Doe*, 925 F.3d 481 at 491 ("We . . . examine [the fourth] factor first and ask whether Plaintiffs were diligent or dilatory in their discovery effort."). There is nothing in the record to suggest that Gaskins procrastinated in seeking discovery. Rather, the record demonstrates that Gaskins submitted her discovery requests to Kentucky Habitat on January 14, 2025—the same day of the parties' Rule 26(f) planning meeting. [DE 13 ¶ 4]. She submitted her discovery requests to HCHFH only one day later. [*Id.* ¶ 5]. Defendants do not suggest that Gaskins did not act diligently in pursuing discovery, nor could they. Because Gaskins timely filed requests for admission, responses to interrogatories, and production of documents and diligently followed up on those requests, the Court finds that the fourth factor weighs in favor of Gaskins.

The Court next considers the first factor—when the Plaintiff learned of the issue that is the subject of the desired discovery. "This factor primarily pertains to situations where there was something that prevented a party from learning about a subject of desired discovery until after some discovery had already been sought." *Doe*, 928 F.3d at 492-93 (citing *Woods v. McGuire*, 954 F.2d 388, 391 (6th Cir. 1992)). In *Doe v. City of Memphis*, the Sixth Circuit found that this factor was neutral when the desired discovery was sought in the plaintiff's first set of discovery requests. *Id.* at 493. Here, too, Gaskins has not changed her requests since filing her initial set of discovery. [DE 13; DE 20]. Thus, this factor remains neutral.

Under the second factor, the Court considers whether the desired discovery would change the ruling on summary judgment. At this juncture, the question is simply whether "the requested discovery "at least . . . ha[s] the potential to materially influence the Court's summary judgment determination," not whether the discovery indisputably will change the outcome. *Wilson v. Ebony Constr. LLC*, No. 2:17-CV-1071, 2018 WL 4743063, at *6 (S.D. Ohio Oct. 2, 2018).

11

To succeed on her ADA and the KCRA discrimination claims, Gaskins must show that the Defendants were "employers" for purposes of those statutes. The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A). The KCRA's language "parallels that of the ADA and Kentucky courts interpret the KCRA consistently with the federal statute." *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015). In fact, the KCRA's definition of "employer" is nearly identically to that of the ADA. *See* KRS 344.030 ("[F]or purposes of determining discrimination based on disability, employer means a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year."). Thus, any discovery relating to the number of individuals employed by the Defendants may change whether the Defendants can be held liable under the relevant statutes.

Additionally, an entity that does not directly employ a plaintiff may nonetheless be held liable for an ADA violation as either a joint or integrated employer. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997). In determining whether an entity is a joint employer, "courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." *Id.* at 993. To determine whether two entities operate as integrated employers, courts examine several factors, including "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Id.* at 993-94.

Gaskins seeks "employment handbooks for Kentucky Habitat and any given or created for Affiliate use, including all drafts and individuals involved with their creation; and documents informing the relationship between Kentucky Habitat and [HCHFH], including corporate structure, memorandums of agreement, communications regarding any employee, and contracts." [DE 13 ¶ 9]. All this requested discovery is relevant to determining the number of people employed by Kentucky Habitat and whether it operated as joint or integrated employer with HCHFH. Specifically, these materials will shed light on whether the two Defendants had any joint operations, common management, centralized control of personnel, and common financial control—all facts relevant to whether the Defendants operated in conjunction with one another. Given that these issues bear on whether Kentucky Habitat may be considered an "employer" under the ADA and the KCRA, this desired discovery could change the ruling with respect to those claims.

With respect to HCHFH, Gaskins requested personnel files, documentation relating to HCHFH's "corporate hierarchy and corporate organizational structure," and identification of "every person who serves on [HCHFH's] board of directors, including their dates of tenure and their roles in the organization." [DE 22-1 at 412, 415, 416]. Once again, these materials may shed light on the number of individuals employed by HCHFH, whether members of the board of directors may be considered "employees," and whether HCHFH and Kentucky Habitat operated as joint or integrated employers. While HCHFH provided some materials requested by Gaskins, it did not do so until after she filed her response. [DE 22-1].

Finally, the discovery Gaskins seeks also affects whether the Defendants may be liable for Gaskins' claim under the Kentucky Wage and Hour Act, which defines "employer" as "any person . . . who employs an employee and includes any person . . . acting directly or indirectly in the

13

interest of an employer in relation to an employee." KRS 337.010(d). Thus, the second factor weighs in Gaskins' favor.

With regard to the third factor—how long the discovery period has lasted—the Court once again notes the early stage at which Defendants filed their motions for summary judgment and the lack of discovery available to Gaskins in responding. Kentucky Habitat filed its motion for summary judgment before a timeline for discovery had even been set [DE 11; DE 18], and HCHFH filed its motion more than a year before the discovery deadline. [DE 15-2; DE 18]. While the Defendants later submitted responses to these requests, Gaskins did not have the benefit of any discovery when responding to Kentucky Habitat and only had responses to requests for admission from HCHFH when responding to its motion. [DE 13 ¶ 6; DE 20 ¶ 5, 9]. Given the abbreviated timeline under which the Defendants filed their motions, this factor weighs in favor of Gaskins.

The fifth factor examines whether defendants were responsive to the plaintiff's discovery requests. In *Doe*, the Sixth Circuit found that this factor weighed in favor of the plaintiff when the defendant was "generally unresponsive to Plaintiffs' discovery requests." 928 F.3d at 495. The court took issue with the fact that the defendant "continued to provide Plaintiffs with new information *after* filing for summary judgment" and the fact that "a major portion of what Defendant produced in response to Plaintiffs' discovery requests was not turned over until *after* [Defendant] had filed for summary judgment." 928 F.3d at 495 (emphasis in original). While the record in this case does not suggest that the Defendants were unresponsive to discovery requests, much of the discovery produced by Defendants was not made available until after they filed for summary judgment. Accordingly, this factor weighs slightly in favor of Gaskins.

Given that Gaskins has filed the necessary Rule 56(d) affidavits and four out of the five *Plott* factors weigh in her favor, the Court finds that summary judgment would be premature and additional discovery is warranted.

## IV.   CONCLUSION

Accordingly, for the stated reasons, **IT IS ORDERED** that Defendants' motions for summary judgment and partial summary judgment [DE 11; DE 15] are **DENIED** without prejudice.  **Any future motions for summary judgment must be filed after the close of discovery.**

Rebecca Grady Jennings, District Judge
United States District Court

September 15, 2025